# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| SHIRLEY JAY MCGEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 09-40120-FDS |
| UMASS CORRECTIONAL HEALTH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS TO DISMISS

This is an action by plaintiff Shirley Jay McGee, an inmate now confined at NCCI Gardner, against various prison and health-care provider defendants. The defendants are: (1) UMass Correctional Health; (2) Charles Roundtree, Health Services Administrator; (3) Jess Hammon, Physical Assistant; (4) Dr. Arthur M. Brewer; (5) Lemuel Shattuck Hospital; (6) Dr. Adriana Carrillo; (7) Terre Marshall; (8) Harold Clarke, Commissioner of the Massachusetts Department of Correction; (9) Correctional Officer Jean Grincewicz; (10) Grievance Coordinator William Winn; (11) James Saba, Superintendent of NCCI Gardner; (12) Paul Oxford; (13) Correctional Officer Robert Grady; (14) Nurse Carole Martin; (15) Nurse Gene Chaisson; (16) Rowdy Huff; (17) Correctional Officer David Seipold; and (18) Correctional Officer David Anderson. (*See* Amend. Compl. Case Caption, ¶¶ 2-19).

Plaintiff alleges that he injured his shoulder while exercising in 2007, and that he received substandard medical treatment from hospital and prison security staff. (Amend. Compl. at ¶¶ 20-60, 69, 79, 114). In particular, he contends that he was prescribed physical therapy when he had

not yet been diagnosed, leading to what he alleges was a further aggravation of the underlying injury. (*Id.* at ¶¶ 28-37). He also alleges that the surgery performed on his shoulder by Dr. Carrillo at Shattuck Hospital was substandard, that he developed a hematoma and infection as a result, and that he was not treated for the infection for a full week after the prison's medical staff discovered it. (*Id.* at ¶¶ 3-60).

Plaintiff further alleges that he filed several grievances with the Department of Corrections ("DOC") about the inadequate treatment he had received from prison and hospital staff. (*Id.* at ¶¶ 61, 72, 76-79, 81-85, 87-90, 95). He alleges that prison staff subjected him to unfair disciplinary treatment in retaliation for his filing of these grievances. These allegedly retaliatory acts include, among other things, removal of work privileges, withholding of pain medication, denial of his fiancee's attempts to visit him, physical assaults at the hands of prison staff, racist comments made by prison staff, and placement in segregation for one week. (*Id.* at ¶¶ 47-51, 65, 69, 73, 77, 79-80, 84, 86, 92, 95, 97, 107-113).

Pending before this Court are four motions to dismiss filed by (1) UMass Correctional Health; (2) Shattuck Hospital; (3) Harold Clarke, Terre Marshall, Robert Grady, and Rowdy Huff; and (4) Charles Roundtree and Arthur Brewer. There is also a suggestion of death with regard to defendant William Winn. For the reasons discussed below, the motions to dismiss will be granted, and the claim against defendant Winn will also be dismissed.

**I.     Claims Against UMCH**

Defendant UMass Correctional Health ("UMCH") contends that it is arm of the state and, therefore, immune from suit in federal court under the Eleventh Amendment of the U.S. Constitution.

Under the Eleventh Amendment, "states are immune . . . from private suit in federal courts, absent their consent" for claims seeking money damages. *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002). This immunity extends to any entity that is an "arm of the state." *Wojcik v. Massachusetts State Lottery Comm'n.*, 300 F.3d 92, 99 (1st Cir. 2002). A distinction is made between entities that are arms of the state, which are entitled to immunity, and political subdivisions, which are not. *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico*, 322 F.3d 56, 61 (1st Cir. 2003). The relevant question, therefore, is whether UMCH is an arm of the state for purposes of asserting Eleventh Amendment immunity.

A two-part test is used to determine whether an entity is an arm of the state. *Breneman v. United States ex rel. Federal Aviation Administration*, 381 F.3d 33, 39 (1st Cir. 2004). The first step involves examining structural factors to determine whether "the state clearly structured the entity to share its sovereignty." *Fresenius*, 322 F.3d at 68. Specifically, these factors include, but are not limited to:

1. whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees;

2. whether the agency's function is governmental or proprietary;

3. whether the agency is separately incorporated;

4. whether the state exerts control over the agency, and if so, to what extent;

5. whether the agency has the power to sue, be sued, and enter contracts in its own name and right;

6. whether the agency's property is subject to state taxation; and

7. whether the state has immunized itself from responsibility for the agency's acts or omissions.

*Id.* at 61 n. 6. However, "[i]f the factors assessed in analyzing the structure point in different directions, then the dispositive question concerns the risk that the damages will be paid from the public treasury." *Id.* at 68. The second part of the analysis "focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness." *Id.*

The University of Massachusetts ("UMass") is "a public institution of higher learning within the system of public higher education . . . [that is] governed by [a] board of trustees." Mass. Gen. Laws ch. 75, § 1. The board of trustees consists of 19 members—17 appointed by the governor and 2 non-voting student members. *Id.* at § 1A. The board has the "authority, responsibility, rights, privileges, powers, and duties customarily and traditionally exercised by governing boards of institutions of higher learning." *Id.* at § 1. The operating funds for UMass are appropriated by the Massachusetts legislature and administered by the University trustees. Mass. Gen. Laws ch. 75, §§ 8, 12. The trustees are required to submit proposed budgets to various state officials, including the Board of Higher Education, the Secretary of Administration and Finance, and the legislative committees on ways and means. Mass. Gen. Laws ch. 15A, § 15B. They may also maintain special trust funds for income-producing projects, but all income from such projects must be held in trust for the specific purpose for which the fund was established. Mass. Gen. Laws ch. 75, § 11. Employees of UMass are considered employees of the Commonwealth. *Id.* at §14.

Mass. Gen. Laws ch. 75, § 34 authorized the trustees of UMass to create and maintain a medical school, under which it formed the University of Massachusetts Medical School ("UMMS"). UMMS is one of five campuses that comprise the UMass educational system. (Jenal Aff. ¶ 2).

UMCH is a program run by UMMS that provides medical care to Massachusetts inmates under contract with DOC. (Jenal Aff. ¶ 4). UMCH is not a separately incorporated entity, but simply the name of a program. (*Id.* at ¶ 5). All of the individuals that manage UMCH are employees of UMMS. (Jenal Aff. ¶ 6). UMCH does not have any sources of funding independent of UMMS. (*Id.* at ¶ 7). To the extent that UMCH has any property, it is owned by UMMS. (*Id.* at ¶ 8). Any contract that names or refers to UMCH is approved and entered into by UMMS. (*Id.* at ¶ 10). Any monies generated by UMCH are deposited in the general treasury of UMass and controlled by a central treasurer for the entire UMass system. (*Id.* at ¶ 11).

It is doubtful, to say the least, whether UMCH is an entity of any kind that is subject to suit. In any event, even assuming that UMCH is such an entity, it is clearly an arm of the state.

It is well-settled that UMMS "is a public institution established under the laws of the Commonwealth and is, accordingly, an 'arm' of the state entitled to Eleventh Amendment immunity." *Orell v. UMass Memorial Medical Center, Inc.*, 203 F. Supp. 2d 52, 60 (D. Mass. 2002); *see also Ali v. Univ. of Mass. Medical Center*, 140 F. Supp. 2d 107, 100 (D. Mass. 2001) (finding that UMMS is an arm of the state for Eleventh Amendment purposes); *McNamara v. Honeyman*, 406 Mass. 43, 47 (1989) (finding that UMass is an agency of the Commonwealth). Plaintiffs contend that UMCH should also be considered an arm of the state for purposes of determining Eleventh Amendment immunity. *See Neo Gen Screening, Inc. v. New England Newborn Screening Program*, 1998 WL 35278283 (D. Mass. Dec. 3, 1998) (dismissing claims against UMMS and its subsidiary program under the Eleventh Amendment for lack of subject matter jurisdiction); *Shedlock v. Univ. of Mass. Corr. Health and Criminal Justice Program*, Docket #1:08-cv-11969-RGS, order dated June 30, 2009 (dismissing claim against UMCH).

5

The factors to be considered under the first part of the "arm of the state" analysis weigh in favor of immunity. For example, UMCH is not separately incorporated, nor is any of UMCH's property subject to state taxation. (Jenal Aff. ¶¶ 5, 9). It does not have the ability to contract for itself. (*Id.* at ¶ 10). It appears that UMCH performs a "governmental or proprietary function" by providing health-care services for inmates in the custody of the DOC. (*Id.* at ¶ 4).[1] Thus, the services provided by UMCH are of a governmental nature.

The second part of the "arm of the state" analysis further supports a finding that UMCH is entitled to Eleventh Amendment immunity. The Vice Chancellor for Administration and Finance at UMMS has submitted a sworn affidavit that "any judgment that might enter against [UMCH] in this case would be satisfied by the Commonwealth of Massachusetts or by insurance purchased by [UMass] for the purposes of satisfying judgments against the state." (Jenal Aff. ¶12). For all purposes, the UMass treasury consists of state funds. *See* Mass. Gen. Laws ch. 75 §6 (subjecting all accounts of the university to oversight by the state auditor); Mass. Gen. Laws ch. 75 §7 (making the university's budget subject to the direction of the governor); and Mass. Gen. Laws ch. 75 §8 (authorizing the legislature to appropriate state funds to the university).

The Court accordingly finds that UMCH, as a program completely encapsulated within UMMS and the UMass, is an arm of the state for purposes of determining Eleventh Amendment immunity. The claims asserted against UMCH will therefore be dismissed.

## II.    Claims Against Shattuck Hospital

Defendant Shattuck Hospital is a named defendant in Counts 1, 2, 3, 8, and 16. It has

---

[1] The state is required to provide such services under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976).

moved to dismiss all claims against it for failure to state a claim upon which relief can be granted.

### A.     Standard of Review

On a motion to dismiss under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### B.     Civil Rights Claims - Counts 1, 2, 3, and 8

The complaint asserts claims under 42 U.S.C. §1983 and Mass. Gen. Laws ch. 12, §§11H and 11I alleging that plaintiff's constitutional rights were violated.[2] To bring a valid claim under §1983, a plaintiff must allege that some "person" acting under color of state law deprived him of "rights, privileges or immunities secured by the constitution." 42 U.S.C. §1983.  It is well-settled,

---

[2] Although Counts 2 and 3 purport to be brought under the Fifth and Fourteenth Amendments to the U.S. Constitution, it is §1983 that provides the statutory vehicle for a plaintiff to bring a claim for a constitutional tort. "A person may recover damages [under §1983] from a state or local official who, while acting under color of state law, commits a constitutional tort." *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002).

however, that neither a state nor its agencies or officials are "persons" within the meaning of §1983. *Brady v. Dill*, 24 F. Supp. 2d 129, 130 (D. Mass. 1998), citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 70-71 (1989); *see also Cook v. McLaughlin*, 917 F. Supp. 79, 82 (D. Mass. 1996). Shattuck Hospital is a part of the Massachusetts Department of Public Health, whose commissioner has general supervision over its operation. Mass. Gen. Laws ch. 111, §69E. Therefore, Shattuck Hospital is part of a state agency, and is not a "person" subject to suit under §1983. The claims against Shattuck Hospital under §1983 (Counts 1, 2, and 3) accordingly will be dismissed.

Likewise, Shattuck Hospital is not considered a "person" within the meaning of the state civil rights statute, Mass. Gen. Laws ch. 12, §11.[3] *See Commonwealth v. Elm Medical Laboratories, Inc.*, 33 Mass. App. Ct. 71, 76-77 (1992) (holding that by enacting the state Civil Rights Act, the legislature did not intend to abolish sovereign immunity for the acts described in §§11H and 11I).[4] Accordingly, Count 8 will also be dismissed.

---

[3] Mass. Gen. Laws ch. 12, § 11H provides:

Whenever any person . . . interfere [or attempt to interfere] by threats, intimidation or coercion, with the exercise or enjoyment by any other person . . . of rights secured by the constitution or laws of the United States[ or of the Commonwealth], the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. . . ."

Mass. Gen. Laws ch. 12, § 11I provides:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States[ or of the Commonwealth] has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.

[4] The word "person" in such a statute is not ordinarily construed to include the state. *See Kilbane v. Secretary of Human Servs.*, 14 Mass. App. Ct. 286, 287-288 (1982) (citing cases); *see also Will v. Michigan Dept.*

### C.     Intentional Infliction of Emotional Distress Claim - Count 16

Count 16 purports to state a cause of action for intentional infliction of emotional distress against all defendants, including Shattuck Hospital. Shattuck Hospital, however, cannot be held liable for intentional torts. Mass. Gen. Laws ch. 258, §10(c) provides that the Commonwealth cannot be held liable for any claim arising out of an intentional tort, and specifically covers claims for intentional mental distress. Count 16 thus fails as a matter of law.

For the foregoing reasons, the claims against defendant Shattuck Hospital will be dismissed for failure to state a claim.

### III.    Claims Against Clarke, Marshall, Grady, Huff, Roundtree, and Brewer[5]

#### A.     Failure to Comply with Court Order

By statute, a district court is required to dismiss a complaint filed by a prisoner *in forma pauperis* "at any time" if the court determines that it lacks an arguable basis in law or fact, seeks relief against a defendant who is immune from liability, or fails to state a claim. 28 U.S.C. § 1915(e)(2)(b). In all prisoner actions directed against a governmental entity or officer, a court must screen at the earliest practicable time, regardless of whether or not a prisoner litigant has paid the filing fee, to determine if the action lacks an arguable basis either in law or in fact, seeks relief from a defendant who is immune from liability, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A; *cf. Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (*pro se*

---

*of State Police*, 491 U.S. 58, 64 (1989) ("in common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it"). Moreover, the definition of "person" under Mass. Gen. Laws ch. 4, § 7, clause 23, includes corporations, societies, associations, and partnerships, but not the Commonwealth or its departments.

[5] There are two separate motions to dismiss discussed under this section. The first was filed by defendants Clarke, Marshall, Grady, and Huff, and the second was filed by defendants Roundtree and Brewer. Because both motions make essentially the same arguments and require the same analysis, the Court will discuss them together.

complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

After thorough examination of the complaint, the Court held on September 14, 2009, that the complaint did not allege sufficient facts to form a basis for any claims against Clarke, Marshall, or Brewer. In particular, the Court noted that plaintiff brought his claims pursuant to Section 1983, and that "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable [under § 1983]." *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 146, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)). "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" (*Id.*). (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)). Thus, liability could not be imposed on defendants Clarke (the Commissioner of Correction) and Marshall (the Department of Correction Assistant Deputy for Clinical Services) based on their respective positions and ranks. The original complaint contained no factual allegations that Clarke or Marshall were personally involved in denying plaintiff any federally protected rights.

Furthermore, the only reference that plaintiff made to Brewer in the original complaint was to list his name in the "parties" section. (Compl. ¶ 5). The body of the complaint failed to make any factual allegations concerning Brewer.

As a result, the claims against Clarke, Marshall, and Brewer were dismissed. The Court provided plaintiff with the opportunity either to show good cause why the dismissal should not be upheld or to amend his complaint to cure its deficiencies within 42 days of the Order. Plaintiff

filed an amended complaint on September 25, 2009, that was nearly identical to his original complaint. The amended complaint has not alleged any additional facts that could plausibly make Clarke, Marshall, or Brewer liable for his injuries.[6] The claims against Clarke, Marshall, and Brewer will therefore be dismissed.[7]

### B.   Lack of Service

Fed. R. Civ. P. 4(c)(1) expressly provides that "[a] summons shall be served together with a copy of the complaint" and "[t]he plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m)." Fed. R. Civ. P. 4(j) provides that "[i]f a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion." In situations where there has been no service at all, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

Generally, dismissal for lack of timely service involves a two-step analysis: "[f]irst, the court must determine whether the plaintiff has met its burden of establishing "good cause" for the untimely service," and "second, if there is no good cause, the court has the discretion to

---

[6] The amended complaint, filed on September 25, 2009, was identical to the original complaint, with only one exception: at paragraph 129, Count 15 was changed from "Legal Malpractice" to "Medical Malpractice."

[7] Plaintiff requests leave to file a second amended complaint, contending that he amended the complaint constituted his best effort to comply with the Court's directions as a *pro se* litigant. However, the Court finds that plaintiff has made no real attempt to file an amended complaint addressing the Court's concerns, and that providing him with a further opportunity would simply reward a lack of diligence.

dismiss without prejudice or to extend the time period." *United States v. Tobins*, 483 F. Supp. 2d 68, 77 (D. Mass. 2007). A plaintiff's "[p]ro se status . . . is not automatically enough to constitute good cause for purposes of Fed. R. Civ. P. 4(m)." *McIsaac v. Ford*, 193 F. Supp. 2d 382 (D. Mass. 2002). "[E]xceptional relief is appropriate only in circumstances where an extension of time is sought prior to the expiration of the Rule 4(m) deadline, or where a pro se litigant can show confusion on his part, either because of his unfamiliarity with the rules, or because of his reliance on the misleading advice of others." *McIsaac*, 193 F. Supp. 2d at 384.[8]

Pursuant to Rule 4(m) and this Court's order of September 14, 2009, plaintiff had 120 days from September 14, 2009, to serve the defendants.[9] Plaintiff attempted to serve 15 defendants in this case.[10] However, it appears as though he was unable to serve defendants Roundtree, Grady, and Huff. (Pl.'s Mem., Docket # 66, Exs. A, B).

---

[8] It also appears that plaintiff did not comply with Local Rule 4.1, which provides that "[a]ny summons not returned with proof that it was served within . . . 120 days of the filing of the complaint is deemed to be unserved for the purpose of Fed. R. Civ. P. 4(m)." Local Rule 4.1(A). Local Rule 4.1(B) provides that "[c]ounsel and parties appearing pro se who seek to show good cause for the failure to make service within the 120 day period prescribed by Fed. R. Civ. P. 4(m) shall do so by filing a motion for enlargement of time under Fed. R. Civ. P. 6(b), together with a supporting affidavit. If on the tenth day following the expiration of the 120 day period good cause has not been shown as provided herein, the clerk shall forthwith automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court." *See Tobins*, 483 F. Supp. at 78. This time period has also expired without any effort on the part of plaintiff to enlarge the time period for service or show good cause for failing to effect service within the time proscribed by the rules and the Court's September 14, 2009 order.

[9] The Court's order stated that "The Clerk shall issue summonses, and the United States Marshal shall serve a copy of the summonses, complaint, and this Order upon defendants. . . ." This distinguishes the immediate case from that of *Laurence v. Wall*, where the First Circuit found abuse of discretion for the district court's failure to alert the *pro se* plaintiff of his rights under 28 U.S.C. § 1915(d) and Fed. R. Civ .P. 4(c)(3). 551 F.3d 92, 93-94 (1st Cir. 2008).

[10] In his memorandum, plaintiff contends that he attempted to serve all 18 defendants. However, the exhibit attached to his memorandum only provides receipts for service of process to 15 of the 18 defendants, and there is none for defendants Clarke, Marshall, or Brewer. Plaintiff submits that defendant Clarke refused and avoided service, but without any receipt, the Court has no means of knowing whether plaintiff even attempted to serve him. This discrepancy does not affect the Court's analysis, however, because defendants Clarke, Marshall, and Brewer will be dismissed for the reasons set forth above.

Plaintiff argues that he has several grounds for showing "good cause" for his failure to serve defendants Roundtree, Grady, and Huff. Specifically, plaintiff asserts that he made several attempts to serve defendants Clarke, Marshall, Grady and Huff. He cites only to Exhibit B, attached to his memorandum, in support of this statement. However, Exhibit B only provides receipts of attempted service on defendants Grady, Huff, and Roundtree.

Plaintiff alleges that Grady retired in August 2009 and that he "fled the jurisdiction of the Commonwealth" and left no forwarding address. (Pl.'s Mem., Docket # 64 at 5). Plaintiff attempted to serve him at his old DOC address, but was unsuccessful. (Pl.'s Mem., Docket #66 at 7). He also contends that defendants Clarke, Marshall, and Huff "refused and avoided service," and that Huff was transferred to another facility. (*Id.*). He asserts that "[Roundtree, Brewer, Clarke, Marshall, and Huff] intentionally avoided service." (Pl.'s Mem., Docket #64 at 5).

Plaintiff also states that when he received the process receipts from the U.S. Marshals Service, he assumed that defendants Roundtree, Brewer, Clarke, Marshall, Grady, and Huff had been served. (*Id.*). However, the receipts for Grady, Huff, and Roundtree clearly show a checkmark in the box where the Marshalls Service indicated that it was "unable to locate the individual . . . named above." (Pl.'s Mem., Docket # 66, Ex. B). The receipts for Grady and Roundtree indicate "no address" under the "Remarks" section, and the receipt for Huff states "Not @ Facility" in that same section. (*Id.*).

Plaintiff also alleges that he mailed the summons and complaint to Roundtree, Brewer, Clarke, Marshall, Grady, and Huff by first class prepaid mail when he found out that they had not yet been served. (Pl.'s Mem., Docket #64 at 5).

Finally, plaintiff alleges that prison officials engaged in further retaliation against him by

13

failing to send out his mail. (*Id.* at 6).

However, plaintiff's arguments consist entirely of conclusory statements. He has failed to present evidence from which the Court can infer that he had good cause for failing to comply with the Rules as to service. Therefore, the motions to dismiss Grady, Huff, and Roundtree will be granted without prejudice.[11] The Court will reconsider the dismissal of these three defendants if, within 45 days of the date of this memorandum, plaintiff presents evidence that establishes good cause for his failure to comply with Rule 4(m).

## V.     Suggestion of Death of Defendant Winn

The DOC Defendants collectively filed a suggestion of death of defendant Winn with this Court on April 14, 2010. Neither plaintiff nor any of the defendants has moved for substitution of Winn by his successor or representative. Fed. R. Civ. P. 25 provides that "[i]f the motion [for substitution] is not made within 90 days after the service of a statement noting the death, the action by or against the decedent must be dismissed." Because more than 30 days have passed without any motion for substitution, defendant Winn will be dismissed from the case.

## VI.    Conclusion

For the foregoing reasons, the motions to dismiss by defendants UMCH, Shattuck Hospital, Clarke, Marshall, and Brewer are GRANTED with prejudice. The motions to dismiss by defendants Roundtree, Grady, and Huff are GRANTED without prejudice. The Court will reconsider the dismissal of defendants Roundtree, Grady, and Huff if plaintiff provides, within 45 days of this order, evidence that he had good cause for failing to comply with Rule 4(m). The

---

[11] For the reasons stated above, the motions to dismiss Clarke, Marshall, and Brewer are granted with prejudice and there is therefore no need for the Court to include those defendants in this part of the holding regarding service of process.

claims against defendant Winn are DISMISSED.

**So Ordered.**

                                            /s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
Dated: September 1, 2010                United States District Judge